# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| ALEX BUGNO, | Case No. 4:24-cv-348 |
| Petitioner, | DISTRICT JUDGE J. PHILIP CALABRESE |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| WARDEN ANGELA HUNSINGER-STUFF, | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner Alex Bugno filed a Petition under 28 U.S.C. §2254 for a Writ of Habeas Corpus. Doc. 1. Bugno is currently in custody at Allen County Correctional Institution serving an aggregate 17-year sentence imposed by the Mahoning County Court of Common Pleas in *State v. Bugno*, Case No. 18-CR-425. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Bugno's petition.

## Summary of facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record" *Johnson v. Bell*, 525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id.*; *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals, Seventh Appellate District, Mahoning County, Ohio summarized the evidence submitted at trial and the facts underlying petitioner's convictions, as follows:

> {¶11} A trial by jury commenced on January 15, 2020.
>
> {¶12} The State presented 35 exhibits and 14 witnesses: Officer James Rowley, Lieutenant Brian Flynn, Officer Anthony Marzullo, and Officer Jacob Short, with YPD; Whitney Voss, a forensic scientist with BCI; Dr. Pradeep Mathur, a child psychiatrist at Belmont Pines; Clarice Cowgill and Heather Karl, BCI cyber-crimes unit special agents; Christine Ross, criminal intelligence analyst and forensic artist at BCI; R.O.'s father; R.O.; M.W.; Officer Charles Hillman, with the Boardman Police Department; and Christopher Michael Mullins, a Bugno Towing prior employee.
>
> {¶13} This matter began on June 21, 2014 when Appellant called YPD to report a criminal damaging incident that occurred at his business, Bugno Towing, located at 1101 East Indianola Avenue, Youngstown, Ohio. Three vehicles in Appellant's tow yard had been shot with BB guns. Appellant later reviewed security footage. Appellant determined that R.O. was one of the individuals involved in the BB gun incident. Appellant then called R.O.'s father, who later confronted his son.
>
> {¶14} During that discussion, R.O. was upset and shaking. R.O. revealed to his father that Appellant had been paying him for oral sex. R.O. ran to the second floor of his family's home, grabbed his father's shotgun, and attempted suicide. Fortunately, his father stopped him. R.O. was later taken to Belmont Pines for psychiatric treatment.

2

R.O.'s father was also shown photographs made from a video in which Appellant is seen performing oral sex on M.C.

{¶15} M.W. testified that he grew up with R.O. and M.C. and that they had been friends since childhood. M.W., R.O., and M.C. would spend time at Appellant's Indianola business. In early 2014, M.C. told M.W. that Appellant would pay them money to "pretty much have his way with us." (1/15/2020 Jury Trial T.p., p. 994). M.W. initially rejected the idea.

{¶16} M.W. recounted a specific day where he was at Appellant's Indianola business with M.C. and others. Appellant suggested they go to his other business location, Bugno Towing, located at 535 North Garland Avenue, Youngstown, Ohio. M.W. agreed. After they arrived, Appellant asked M.W. if he wanted to have some more fun and Appellant gave him pills. M.W. took the pills and "the night ended up taking us [M.W., R.O., and M.C.] getting naked and [Appellant] paying us $500 each to perform sexual acts on us." (Id. at p. 998). This same type of incident occurred multiple times thereafter, i.e., approximately 10 to 15 times between February and June of 2014, and at least once a month during that timeframe. Appellant would sometimes give the boys pills during the sexual abuse.

{¶17} M.W. explained that Appellant would either call or text the boys in order to set up the sexual encounters. Most of the incidents took place at the Indianola business location because "[i]t was easy to hide what was going on" due to the layout of the building. (Id. at p. 1005). During one incident, Appellant told M.W. that the sexual encounter was going to be livestreamed on the internet and that he would pay him more because of that. In addition to paying the boys to perform oral sex on them, Appellant would also pay them to do other things, as he "like[d] to be peed on, or to be slapped around." (Id. at p. 1009).

3

{¶18} M.W. also discussed the night in which he was part of the group that vandalized Appellant's business. Not realizing that the vandalism had occurred, Appellant called M.W. and other boys to come to his shop. M.W., R.O., and another juvenile male, B.L., went to Appellant's shop and performed sex acts. The boys returned to R.O.'s house where they spent the night. The next morning, R.O.'s father heard about the vandalism and R.O. told him about the sexual abuse that had been taking place. M.W. indicated that R.O. attempted suicide. M.W. then left R.O.'s house and went home to inform his parents with regard to what had been happening with Appellant.

{¶19} Thereafter, M.W. made a Facebook post denying that any sexual abuse had occurred. M.W. made the post because the sexual abuse information was being spread among the public by M.C. M.W. did not tell the truth in the Facebook post because he felt ashamed and embarrassed. M.W. was adamant, however, that the sexual abuse did in fact occur.

{¶20} According to R.O., he began spending time at Bugno Towing when he was about 10 years old because it was close to his house and his father had worked there. Like M.W., R.O. recalled M.C. bringing up the potential to perform sex acts for Appellant for money during February 2014 when he was around 15 years old. R.O. told the same version of events as M.W. regarding Appellant's sexual abuse, i.e., how Appellant would set up the incidents via phone calls or text messages; Appellant would tell the boys to take their clothes off so he could perform oral sex on them; Appellant paid each boy $500; Appellant paid extra for video recordings; the sexual abuse was recorded at least 10 times; Appellant would give the boys pills prior to the sexual incidents; and these incidents reoccurred at least once per month from February to June of 2014.

{¶21} Officer Rowley testified that Appellant had called YPD regarding the criminal damaging incident at his business. A few days later, R.O.'s

4

father called YPD reporting that Appellant had sexually abused his son. Officer Rowley later interviewed R.O. at Belmont Pines where he had been taken for treatment after the sexual abuse was discovered and after he had attempted suicide. R.O. informed Officer Rowley of another victim, M.W., during the initial interview. M.W. was also interviewed and reported being a victim of Appellant's sexual abuse. Officer Rowley determined that the incidents occurred at Bugno Towing and contacted BCI for further assistance.

{¶22} Search warrants were subsequently obtained for Appellant's businesses. The searches resulted in the seizure of a number of electronic devices and pills. A subsequent search of the electronics revealed a video of Appellant performing oral sex on M.C. which was played for the jury. (State's Exhibit 1). The pills were sent to BCI for testing. Some of the pills were revealed to contain morphine, oxycodone, hydrocodone, and opioids. Phone records were also examined in the investigation. Between January and June of 2014, Appellant had contacted R.O. 569 times and M.W. 445 times.

{¶23} Dr. Mathur treated R.O. at Belmont Pines following his suicide attempt. Dr. Mathur testified R.O. was upset about the sexual abuse caused by Appellant. Dr. Mathur referred the abuse to Children's Services. The referral included the fact that Appellant was the individual who sexually abused R.O.

{¶24} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶25} Appellant presented 25 exhibits and 11 witnesses: Richard Brooks Douglass, an attorney who took business trips with Appellant; Rodney DeRicco, a friend of Appellant's; Melissa Dunlap, Arthur Richards, Kathleen DePizzo, Skyler Hergenrader, Beth Proffitt, and David Pratt, Bugno Towing prior employees; Robert Maclarren, who

5

lived at Bugno Towing; Christopher Michael Bugno, Appellant's father; and Martha Heffron, who has known Appellant since he was a baby.

{¶26} Appellant's witnesses who had worked for him testified they never observed any improper sexual activity regarding Appellant and the boys. Attorney Douglass testified he and Appellant were out of the country during various times from February to June of 2014.

*State v. Bugno*, No. 20 MA 0030, 2022 WL 2114587, at *2–4 (Ohio Ct. App. June 9, 2022).

## Procedural Background

### Trial Court Proceedings

In April 2018, the Mahoning County grand jury issued an indictment charging Bugno with six counts of pandering obscenity involving a minor in violation of Ohio Rev. Code § 907.321(A)(5)(C) (counts 1–6), fourteen counts of compelling prostitution in violation of Ohio Rev. Code § 2907.21(A)(2)(a), (counts 7–20), and fourteen counts of importuning in violation of Ohio Rev. Code § 2907.07(B)(2) (counts 21–34). Doc. 8-1, at 6–16. Bugno, through counsel, pleaded not guilty. *Id.* at 18.

In February 2019, a grand jury issued a superseding indictment adding one count of pandering obscenity involving a minor (count 35) in violation of Ohio Rev. Code § 2907.321(A)(1). Doc. 8-1, at 33. Bugno, again through counsel, pleaded not guilty to the superseding indictment. *Id.* at 35.

Later in February 2019, Bugno moved for relief from improper joinder of counts 1 through 6 and counts 7 through 34 of the indictment. Doc. 8-1, at

6

37–52. The State opposed the motion. *Id.* at 54–63. In March 2019, Bugno moved to suppress evidence seized from a search of his business, including a computer found at the premises. *Id.* at 502. The State responded. *Id.* at 579. The trial court held an evidentiary hearing on both motions in April 2019. *Id.* at 628. The trial court overruled Bugno's motion for relief from improper joinder in a May 2019 decision. *Id.* at 65–69. The parties agreed to submit and submitted supplemental briefing regarding the motion to suppress in June 2019. *Id.* at 600, 619. In July 2019, the trial court also overruled Bugno's motion to suppress. *Id.* at 628–33.

In December 2019, Bugno renewed his motion for relief from improper joinder. *Id.* at 71–82. In response to Bugno's renewed motion, the State agreed to severance and elected to proceed to trial on counts 7–35. *Id.* at 84–85. In January 2020, the trial court sustained Bugno's motion, severing counts 1 through 6 from counts 7 through 35. *Id.* at 87.

In January 2020, the State moved to amend the indictment to include the word "knowingly" in counts 7 through 20, the compelling prostitution charges, and to amend count 35, pandering obscenity involving a minor, to reflect the correct criminal statute, Ohio Rev. Code § 2907.321(A)(3). *Id.* at 89–91. Bugno opposed the State's motion to amend counts 7 through 20 of the indictment and moved to dismiss those counts. *Id.* at 108–120. He also filed a motion for relief from improper joinder of count 35, *id.* at 93–99, which the State opposed, *id.* at 101–106. Later in January 2020, the trial court granted

7

the State's motion to amend the indictment, *id.* at 122, dismissed counts 21 through 34, *id.* at 124, and overruled Bugno's motion for relief from prejudicial joinder as to count 35, *id.* at 126.

A jury found Bugno guilty on all 14 counts of compelling prostitution—counts 7 through 20—and on one count of pandering obscenity involving a minor—count 35—as charged in the superseding indictment. *Id.* at 156–58. The trial court sentenced him to 17 years, *id.* at 159–160, and ordered him to register as a Tier II Sex Offender or Child-Victim Offender, *id.* at 162–66.

*Direct Appeal*

With the assistance of counsel, Bugno timely appealed to Ohio's Seventh District Court of Appeals. Doc. 8-1, at 168. Bugno presented these six assignments of error:

> 1. The trial court erred in denying Appellant's motion to suppress as it related to the search and seizure of items at the E. Indianola address and the computer as the Search Warrants were fatally defective as each failed to authorize the seizure of any item and each failed to comply with the Particularity requirement of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

> 2. The trial court erred in denying Appellant's motion to sever Count 35, Pandering Obscenity, from Counts 7 through 20, Compelling Prostitution, as joinder of these offenses at trial as the improper joinder counts prejudiced Appellant's right to a fair trial.

> 3. The Prosecutor engaged in prosecutorial misconduct during trial and closing arguments, thus depriving Appellant of his right to a fair trial.

8

> 4. The trial court erred by allowing evidence during the State's case-in chief regarding the Appellant's pre-arrest silence and abused its discretion in failing to grant a mistrial based on the admission of that evidence.
>
> 5. The trial court erred by allowing testimony as to a number of pills and liquid drugs found at Bugno Towing and not connected to the Appellant or the charges against him.
>
> 6. The jury's verdict of Guilty as to the Pandering Obscenity Involving a Minor was not supported by sufficient evidence and verdicts of Guilty as to all counts were against the manifest weight of the evidence.

*Id.* at 182–87.

The State of Ohio filed a responsive brief. *Id.* at 243–83. In June 2022, the Court of Appeals affirmed the trial court court's judgment. *Id.* at 285–308; *Bugno*, 2022 WL 2114587.

Bugno, through counsel, appealed to the Ohio Supreme Court. Doc. 8-1, at 310–11. Bugno presented two propositions of law involving Fourth Amendment claims:

> 1. Search warrants that fail to include command sections authorizing the seizure of particular items are facially and fatally defective, requiring suppression of any evidence seized.
>
> 2. The good faith exception to the exclusionary rule does not apply in a case where the search warrant for a computer is facially deficient based upon the lack of a command to seize property and is so lacking in particularity that, on its face, it violates the Fourth Amendment.

9

*Id.* at 314. The State filed a memorandum in response. *Id.* at 332–46. In September 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Id.* at 348.

In December 2022, Bugno, through counsel, filed a petition for a writ of certiorari in the United States Supreme Court concerning his Fourth Amendment claims. *Id.* at 350–80. In February 2023, the United States Supreme Court denied Bugno's petition. *Id.* at 500.

*Motion for New Trial and Post-Conviction Petition*

In February 2024, Bugno, represented by counsel, filed a combined motion for a new trial under Ohio Rule of Criminal Procedure 33 and delayed post-conviction petition. *Id.* at 412–13. He also requested a discovery period related to his post-conviction petition. *Id.* at 426–32. In May 2024, the State moved to dismiss or for judgment on the pleadings. *Id.* at 441–55. This matter remains pending in state court.[1]

*Federal Habeas Corpus Petition*

In February 2024, Bugno, represented by counsel, filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus. Doc. 1. In his petition, he raises the following grounds for relief:

---

[1]     Bugno's combined motion for new trial and for post-conviction relief pending in state court are collateral proceedings and are not part of his direct, appeal. Neither party makes any argument that the pendency of these motions in state court creates an exhaustion issue. And even if Bugno later alleged an error in these proceedings, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

**GROUND ONE:** The trial Court's denial of the Bugno's motion to suppress, pertaining to the search and seizure of items at the E. Indianola address and the computer, stems from a foundational error. The Search Warrants bore fatal defects because none provided authorization for the seizure of any items, contravening the Particularity requirement of the Fourth Amendment to the United States Constitution as it attaches to the states by way of the Fourteenth Amendment.

**GROUND TWO:** The Prosecutor engaged in prosecutorial misconduct during trial and closing arguments, thus depriving Petitioner of his right to a fair trial.

**GROUND THREE:** The trial Court erred by allowing evidence during the State's case-n-chief regarding the Petitioner's pre-arrest silence and abused its discretion in failing to grant a mistrial based on the admission of that evidence.

Doc. 1, at 12, 29, 35.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct

concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731

12

F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

13

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218,

14

231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court

15

is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

16

**Discussion**

*Ground One is Not Cognizable and Meritless*

In his first ground, Bugno raises a Fourth Amendment claim challenging the constitutionality of a search that he alleges was effectively warrantless due to a lack of particularity on the face of the warrant. *See* Doc. 1-1, at 12 ("[N]one of the four warrants contained a command section that explicitly empowered law enforcement officials to seize items."). Bugno also challenges the trial court's evaluation of his motion to suppress evidence seized as a result of the allegedly warrantless search. *Id.* ("[E]gregiously, the [trial court] concluded that this lack of a seizure command did not invalidate the warrants and thus did not necessitate the suppression of seized evidence."). Notably, and as discussed later, Bugno's petition does not challenge the state appellate court's evaluation of the trial court's decision.

Fourth Amendment claims are not cognizable in federal habeas because Ohio provides a "full and fair" opportunity to litigate an illegal arrest or search and seizure claim. *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *see Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigating Fourth Amendment claims). The Sixth Circuit has held that if a state has made "available [an] avenue for [a habeas petitioner] to present his claim to the state courts," then Supreme Court's decision in *Stone* "prohibits federal habeas

corpus review of [the petitioner's] Fourth Amendment claim." *Good v. Berghuis*, 729 F.3d 636, 637, 639 (6th Cir. 2013).

Nowhere in his briefing, however, does Bugno address the Sixth Circuit's decision in *Good*. Rather, Bugno cites *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982), to support his argument that the state courts' application of the incorporation doctrine and exclusionary rule prevented him from fully and fairly presenting his Fourth Amended claims. Doc. 10, at 10–14. But in *Good*, the Sixth Circuit clarified that "*Riley* is a case about the opportunity at the outset to put the claim before the court[.]" *Good*, 729 F.3d at 638. In *Riley*, the Sixth Circuit found that the petitioner was denied a full and fair opportunity when he was barred, based on the "unanticipated and unforeseeable" application of a novel state procedural rule, from the opportunity to appeal a Fourth Amendment claim. *See* 674 F.2d at 526–27. *Riley* is thus distinguishable—Bugno was not barred from presenting his Fourth Amendment claim.

*Good* makes "clear that the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claims to the state courts, *not an inquiry into the adequacy of the procedure actually used* to resolve that particular claim." *Good*, 729 F.3d at 639 (emphasis added). A state's courts need only "'take cognizance of the constitutional claim and render a decision in light thereof.'" *Id.* at 638 (quoting *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977). And this Court's role is to "ask[]: 'Did the state

courts permit the defendant to raise the claim or not?'" *Hoffman v. Hooks*, No. 15-cv-1200, 2016 WL 4086788, at *2 (N.D. Ohio Aug. 2, 2016)  (quoting *Good*, 729 F.3d at 40). In short, Bugno could present his claim. He raised the same Fourth Amendment challenges both before trial, through a motion to suppress, *see* Doc. 8-1, at 502, and at each level of direct appeal, *see id.* at 168, 310–11. At each stage, the state courts rejected his arguments, and the Supreme Court of the United States also denied his petition for a writ of certiorari. *See* Doc. 8-1, at 285–308, 348, 500.

Given the above, Bugno "had 'the opportunity for full and fair consideration of [his exclusionary rule] claim[] in state court,'" and this Court's review of his "'Fourth Amendment claim' is barred." *Hoffman*, 2016 WL 4086788, at *2 (quoting *Good*, 729 F.3d at 637–38).

Bugno's first ground is further flawed because he presented no discernable challenge to the court of appeal's decision until his Traverse. *Compare* Doc. 1, *with* Doc. 10. So, even if the issue were cognizable, which it's not, he's forfeited any challenge to the court of appeals' determination on the issue. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper); *see also Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019). And even then, Bugno's attempt to address the court of appeal's decision is based on arguments that were not previously raised. *See* Doc. 10, at 2–14 (raising new arguments related the incorporation doctrine and the good faith exception to warrantless searches

and asserting for the first time that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim). This is problematic because, even if his Fourth Amendment claim were cognizable, this Court would defer to the state court of appeals' decision. 28 U.S.C. § 2254(d)(1).

Here, Bugno exercised each available mechanism to challenge the constitutionality of the warrants and searches at issue and the state courts provided reasoning to support their decisions to overrule his claim. *See id.* at 658–63, 315–338. Despite saying for the first time in his traverse that the court of appeals' misapplied *Groh* or *Leon*, none of Bugno's arguments show that the court of appeals' application of *Groh* or *Leon* was "contrary to"—meaning an objectively unreasonable application of—either of these Supreme Court decisions. *See Williams*, 529 U.S. at 412. Instead, Bugno's arguments simply demonstrate that he disagrees with the court of appeals' decision. Bugno's Ground One claim is thus also meritless.

### *Grounds Two and Three are Procedurally Defaulted*

In her return, the Warden argued that, because Bugno failed to present his second and third grounds to the Ohio Supreme Court, the grounds were subject to procedural default. Doc.8, at 18; *see Williams*, 460 F.3d at 806–07 (holding that a petitioner procedurally defaulted an issue that he failed to raise before the Ohio Supreme Court). In his Traverse, Bugno concedes that his "Grounds 2 and 3 cannot survive the procedural bar." Doc. 10, at 1. Bugno is correct in conceding that these grounds are procedurally defaulted.

20

Bugno initially raised Grounds Two and Three on direct appeal to the court of appeals, *see* Doc. 8-1, at 182–87, but he failed to present them to the Ohio Supreme Court. *See* Doc. 8-1, at 314. And Bugno's failure to raise his available federal constitutional claims at each level of state-court review prevents him from raising them now. *Williams*, 460 F.3d at 806. Further, Bugno makes no attempt to overcome his procedural default of Grounds Two and Three. *See Coleman*, 501 U.S. at 750 (holding that to overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered). So, there is no basis for this Court to conclude that these claims are not subject to procedural default.

For these reasons, Bugno's Ground Two and Three claims are procedurally defaulted.

*No Discovery Is Warranted*

Generally, when a state court "'adjudicate[s] [a petitioner's] claim on the merits,'" a federal habeas court "'is limited'" in considering the claim "'to the record that was before the state court.'" *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). As a result, a "district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d)." *Id.*

21

Here, Ohio's Seventh District Court of Appeals considered and rejected Bugno's claims. *See* Doc. 8-1 at 315–338. "[S]o no basis exist[s] … to order discovery or an evidentiary hearing." *Haight v. Jordan*, 59 F.4th 817, 861 (6th Cir. 2023). Further, Bugno is not entitled to discovery or evidentiary hearing because his Ground One claim is not cognizable and his other grounds are defaulted. *See Upshaw v. Stephenson*, 97 F.4th 365, 372 (6th Cir. 2024) (explaining that to show entitlement to an evidentiary hearing, a petitioner must "clear[]" the "'procedural hurdles' of § 2254(d) on the state court record"), *cert. denied*, No. 23-1358, 2024 WL 4426700 (U.S. Oct. 7, 2024); *Young v. Gray*, No. 1:19-cv-416, 2020 WL 1990987, at *8 (N.D. Ohio Jan. 14, 2020) (an evidentiary hearing is appropriate only if a petition is not dismissed) (citing Rule 8(a) of the Rules Governing Section 2254 Cases and collecting cases), *report and recommendation adopted*, 2020 WL 1986481 (N.D. Ohio Apr. 27, 2020). Bugno has thus not shown that with discovery or an evidentiary hearing he would "be able to demonstrate that he … is entitled to relief." *See Bracy*, 520 U.S. at 908–09. So his request for discovery is denied.

## Conclusion

For the reasons set forth above, I recommend that Bugno's Petition be dismissed.

Dated: January 21, 2025

　　　　　　　　　　　　　*/s/ James E. Grimes Jr.*
　　　　　　　　　　　　　James E. Grimes Jr.
　　　　　　　　　　　　　U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).